| | | |
|---|---|---|
| Diana Salgado* | Alice Clapman* | David Brown* |
| Planned Parenthood Federation of America | Helene T. Krasnoff* | Hillary Schneller* |
| 434 W. 33rd Street, | Planned Parenthood Federation of America | Center for Reproductive Rights |
| New York, NY 10001 | 1110 Vermont Avenue NW, Suite 300 | 199 Water Street, 22nd Floor |
| (212) 541-7800 | Washington, DC 20005 | New York, NY 10038 |
| diana.salgado@ppfa.org | (202) 973-4800 | (917) 637-3600 |
| | alice.clapman@ppfa.org | dbrown@reprorights.org |
| *Attorney for Planned Parenthood Arizona, Inc.* | helene.krasnoff@ppfa.org | hschneller@reprorights.org |
| | *Attorneys for Planned Parenthood Arizona, Inc.* | *Attorneys for Paul A. Isaacson, M.D.* |
| Lawrence Rosenfeld | Andrew Beck* | Daniel Pochoda |
| AZ Bar No. 004426 | Talcott Camp* | AZ Bar No. 021979 |
| Daniel B. Pasternak | Brigitte Amiri* | Victoria Lopez |
| AZ Bar No. 023751 | American Civil Liberties Union Foundation | AZ Bar No. 330042** |
| Squire Patton Boggs (US) LLP | 125 Broad Street, 18th Fl. | American Civil Liberties Union Foundation of Arizona |
| 1 East Washington Street, Suite 2700 | New York, NY 10004 | 3707 N. 7th Street, Suite 235 |
| Phoenix, AZ 85004 | (212) 549-2633 | Phoenix, AZ 85014 |
| (602) 528-4000 | abeck@aclu.org | (602) 650-1854 |
| lawrence.rosenfeld@squirepb.com | tcamp@aclu.org | dpochoda@acluaz.org |
| daniel.pasternak@squirepb.com | bamiri@aclu.org | vlopez@acluaz.org |
| *Attorneys for Planned Parenthood Arizona, Inc.* | *Attorneys for Eric Reuss, M.D., M.P.H.; Desert Star Family Planning, LLC; DeShawn Taylor, M.D.* | *Attorneys for Eric Reuss, M.D., M.P.H.; Paul A. Isaacson, M.D.; Desert Star Family Planning, LLC; DeShawn Taylor, M.D.* |

*Applications for admission pro hac vice forthcoming
**Admitted pursuant to Ariz. Sup. Ct. R. 38(f)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Planned Parenthood Arizona, Inc.; Eric Reuss, M.D., M.P.H.; Paul A. Isaacson, M.D.; Desert Star Family Planning, LLC; DeShawn Taylor, M.D., <br><br> Plaintiffs, <br><br> v. <br><br> Mark Brnovich, Arizona Attorney General, in his official capacity; Cara M. Christ, Director of the Arizona Department of Health Services, in | **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** <br><br> Civil Action No. _____ |

010-8087-2409/2/AMERICAS

| | |
|---|---|
| 1 | her official capacity; Patricia E. McSorley, Executive Director of the Arizona Medical Board, in her official capacity; Richard T. Perry, M.D., Medical Board Chair, in his official capacity; James Gillard, M.D., Medical Board Vice Chair, in his official capacity; Jodi A. Bain, Medical Board Member, in her official capacity; Marc D. Berg, M.D., Medical Board Member, in his official capacity; Donna Brister, Medical Board Member, in her official capacity; R. Screven Farmer, M.D., Medical Board Member, in his official capacity; Gary R. Figge, M.D. Medical Board Member, in his official capacity; Robert E. Fromm, M.D., Medical Board Member, in his official capacity; Paul S. Gerding, Medical Board Member, in his official capacity; Lois Krahn, M.D., Medical Board Member, in her official capacity; Edward G. Paul, M.D., Medical Board Member, in his official capacity; Wanda J. Salter, Medical Board Member, in her official capacity; Jenna Jones, Executive Director of the Arizona Board of Osteopathic Examiners in Medicine and Surgery, in her official capacity; Scott Steingard, D.O., Board of Osteopathic Examiners in Medicine and Surgery President, in his official capacity; Douglas Cunningham, D.O., Board of Osteopathic Examiners in Medicine and Surgery Vice President, in his official capacity; Gary Erbstoesser, D.O., Board of Osteopathic Examiners in Medicine and Surgery Member, in his official capacity; Jerry G. Landau, Board of Osteopathic Examiners in Medicine and Surgery Member, in his official capacity; Martin B. Reiss, D.O., Board of Osteopathic Examiners in Medicine and Surgery Member, in his official capacity; Lew Riggs, Board of Osteopathic Examiners in Medicine and Surgery Member, in his official capacity; Vas Sabeeh, D.O., Board of Osteopathic Examiners in Medicine and Surgery Member, in his official capacity, |
| | Defendants. |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiffs Planned Parenthood Arizona, Inc. ("PPAZ"); Eric Reuss, M.D., M.P.H.; Paul A. Isaacson, M.D.; Desert Star Family Planning, LLC; and DeShawn Taylor, M.D. (collectively "Plaintiffs"), by and through their attorneys, bring this Complaint against the above-named Defendants and their employees, agents, delegates, and successors in office, and in support thereof state the following:

**I.   PRELIMINARY STATEMENT**

1. Plaintiffs are Arizona health care providers who bring this civil rights action, seeking declaratory and injunctive relief, on behalf of themselves, their physicians, and their patients, under the United States Constitution and 42 U.S.C. § 1983, to challenge portions of S.B. 1318, 52nd Leg., 1st Reg. Sess. (AZ 2015) ("S.B. 1318") (to be codified at Ariz. Rev. Stat. §§ 36-2153(A)(2)(h), (i)) ("the Act"), which, unless enjoined by this Court, will violate their and their patients' constitutional rights.[1] The Act is scheduled to take effect July 3, 2015.

2. The Act compels Arizona health care providers to tell every abortion patient, orally and in person, that a medication abortion may be reversed, even though no credible evidence exists to support this statement, and even though the information is completely irrelevant to patients that cannot have or do not want to have a medication abortion. The Act also forces Plaintiffs to steer their patients toward an experimental practice that has not been shown to work or to be safe, that violates the standard of care, and that is opposed by the American College of Obstetricians and Gynecologists ("ACOG"). Because the Act compels Plaintiffs, against their medical judgment and in violation of medical ethics, to convey to their patients a state-mandated message that is not medically or scientifically supported and that is antithetical to the purpose of informed consent, the Act violates Plaintiffs' First Amendment rights.

---

[1] A copy of the Act is annexed hereto as Exhibit 1.

3.  In addition, the Act requires that women seeking an abortion receive false, misleading, and/or irrelevant information, which is harmful to Plaintiffs' patients, in violation of those patients' Fourteenth Amendment rights.

4.  To protect their constitutional rights and the rights of their patients, Plaintiffs seek a judgment declaring that these new requirements of Arizona law are unconstitutional and enjoining their enforcement.

## II.   JURISDICTION AND VENUE

5.  Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343(a)(3). Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

6.  Venue is appropriate under 28 U.S.C. §§ 1391(b)(1) and (2) because events giving rise to this action occur in this District and Defendants are located in this District.

## III.  THE PARTIES

### A. Plaintiffs

7.  Plaintiff PPAZ is a nonprofit corporation organized under the laws of Arizona and is the largest provider of reproductive health services in Arizona, operating 11 health centers throughout the state and providing a broad range of reproductive and sexual health services, including cervical cancer screening, breast exams, testing and treatment for sexually transmitted infections, contraception, and surgical and medication abortion. PPAZ also provides abortion services, both surgical and medication abortion, at four of its health centers, which are licensed by the Arizona Department of Health Services ("ADHS"). In 2014, PPAZ provided more than 6500 abortions, approximately 32 percent of which were early medication abortions using a regimen comprised of the medications mifepristone and misoprostol and 68 percent of which were surgical. PPAZ brings this action on behalf of itself, its patients, and the physicians it employs to provide services to

010-8087-2409/2/AMERICAS

its patients, who are licensed to practice medicine by the Arizona Medical Board and the Arizona Board of Osteopathic Examiners in Medicine and Surgery.

8. Plaintiff Eric Reuss, M.D., M.P.H., is a board-certified obstetrician and gynecologist licensed to practice medicine in Arizona. He has a private, solo, general obstetrics and gynecology practice, Scottsdale Obstetrics & Gynecology, P.C., in Scottsdale, Arizona. Dr. Reuss has practiced medicine for 15 years. He is a Diplomate of the American College of Obstetrics and Gynecology, Treasurer of that organization's Arizona Section, and immediate past Chair of Obstetrics and Gynecology at Scottsdale Healthcare Osborn. Dr. Reuss provides his patients with the full range of general obstetrics and gynecology care, including well-woman care; prenatal care; labor and delivery care for approximately 150 women per year; family planning services; and abortion care, both medication and surgical, for approximately 20 women per year. Dr. Reuss sues as an individual on his own behalf and on behalf of his patients seeking abortion.

9. Plaintiff Paul A. Isaacson, M.D., is a board-certified obstetrician and gynecologist licensed to medicine practice in Arizona. For more than twenty years, Dr. Isaacson has provided reproductive health care to thousands of women in Phoenix, including delivering babies and providing abortions. He is currently a physician at Family Planning Associates Medical Group, a private medical practice in Phoenix, of which he is the co-owner. At Family Planning Associates, Dr. Isaacson provides a wide range of reproductive health care services, including both surgical and medication abortion. Last year, Family Planning Associates provided approximately 1900 abortions, of which about 17 percent were medication abortions. Dr. Isaacson sues on his own behalf and on behalf of his patients seeking abortion.

10. Plaintiff Desert Star Family Planning, LLC, is a private physician practice located in Phoenix, Arizona, which provides comprehensive family planning, well woman, and basic men's sexual health services. This includes medication and surgical

010-8087-2409/2/AMERICAS

abortion, and miscarriage management. Desert Star Family Planning is licensed by ADHS. Plaintiff DeShawn Taylor, M.D., is Desert Star's owner and medical director, and is a board-certified obstetrician and gynecologist licensed to practice medicine in Arizona. Desert Star and Dr. Taylor sue on their own behalves and on behalf of their patients seeking abortion.

### B. Defendants

11. Defendant Mark Brnovich is the Attorney General of the State of Arizona, and is sued in his official capacity. Defendant Brnovich has the authority to enforce the Act. As "chief legal officer of the state," he is "the legal advisor of the departments of this state and render[s] such legal services as the departments require." Ariz. Rev. Stat. § 41-192. The Attorney General is charged with certain obligations in connection with enforcement of licensing provisions for all health care institutions (including abortion clinics), including bringing actions to revoke a license or enjoin the operation of a licensee, *id.* § 36-429(B), and actions to recover civil penalties for violation of licensing obligations, *id.* § 36-431.01(E). Further, the Attorney General may petition to enjoin the practice of osteopathic medicine by a physician to prevent irreparable damage to the public health and safety. *Id.* § 32-1857.

12. Defendant Cara Christ, M.D., is the Director of ADHS, and is sued in her official capacity. She has the power and duty to administer and enforce licensure requirements for healthcare institutions, including abortion clinics. *See, e.g., id.* § 36-427(A)(1) ("The director may . . . suspend or revoke, in whole or in part, the license of any health care institution if its owners, officers, agents, or employees . . . [v]iolate this chapter or the rules of the department adopted pursuant to this chapter."); § 36-431.01(A) ("The director may assess a civil penalty against a person who violates this chapter or a rule adopted pursuant to this chapter . . . ."); § 36-449.02 ("If an inspection . . . reveals that an abortion clinic is not adhering to this article or any other law or rule concerning abortion, the director may take action . . . .").

4

13. Defendant Patricia E. McSorley, is the Executive Director of the Arizona Medical Board ("AMB"), and, as such, has the duty to "[i]nitiate an investigation if evidence appears to demonstrate that a physician may be engaged in unprofessional conduct," *id.* § 32-1405(C)(l2). In addition, Defendant McSorley must "sign and execute disciplinary orders, rehabilitative orders and notices of hearings as directed by the board[,]" and review any complaint alleging unprofessional conduct. *Id.* § 32-1405(C)(14) and (21). Defendant McSorley is sued in her official capacity.

14. Defendants Richard T. Perry, M.D., AMB Chair; James Gillard, M.D., AMB Vice Chair; Jodi A. Bain; Marc D. Berg, M.D.; Donna Brister; R. Screven Farmer, M.D.; Gary R. Figge, M.D.; Robert E. Fromm, M.D.; Paul S. Gerding; Lois Krahn, M.D.; Edward G. Paul, M.D.; and Wanda J. Salter, are members of the AMB, an agency of the State of Arizona. Each is named herein and sued herein in his or her official capacity. The AMB has the primary duty to ensure the safe and appropriate practice of allopathic medicine "through licensure, regulation and rehabilitation of the profession in this state," *id.* § 32-1403. The AMB member Defendants have the power and duty to initiate investigations, to determine if a physician has engaged in unprofessional conduct, and to discipline and rehabilitate licensed medical doctors. *See id.* § 32-1403(A)(2) and (5).

15. Defendant Jenna Jones is the Executive Director of the Arizona Board of Osteopathic Examiners in Medicine and Surgery ("BOE"), and, as such, has the duty to "[i]nitiate an investigation if evidence appears to demonstrate that a physician may be engaged in unprofessional conduct," *id.* § 32-1804(B)(l4). In addition, Defendant Jones shall also "provide assistance to the attorney general in preparing and executing disciplinary orders, rehabilitation orders and notices of hearings" as directed by the BOE. *Id.* § 32-1804(B)(l6). Defendant Jones is sued in her official capacity.

16. Defendants Scott Steingard, D.O., BOE President; Douglas Cunningham, D.O., BOE Vice President; Gary Erbstoesser, D.O.; Jerry G. Landau; Martin B. Reiss, D.O.; Lew Riggs; and Vas Sabeeh, D.O., are members of the BOE, an agency of the State

5

of Arizona. Each is named herein and sued in his official capacity. The BOE member Defendants are charged with the power and duty to ensure the safe and appropriate practice of osteopathic medicine, *id.* § 32-1803(A)(l), which includes the power and duty to "conduct hearings, place physicians on probation, revoke or suspend licenses, enter into stipulated orders, issue letters of concern or decrees of censure and administer and enforce [chapter 17]," *id.* § 32-1803(A)(2). Further, the BOE member Defendants have the duty and power to "[d]iscipline and rehabilitate osteopathic physicians," *id.* § 32-1803(A)(6).

### IV. FACTUAL ALLEGATIONS

#### A. State-Mandated Informed Consent Process in Arizona

17. Existing Arizona law states that an abortion shall not be performed or induced without the voluntary and informed consent of a patient. Specifically, the law requires that patients seeking an abortion meet in person with a physician at least 24 hours before their abortion to receive certain state-mandated information, including accurate medical information about a patient's individual pregnancy, and various statements about Arizona law and policy, including that ADHS maintains a website about abortion. Ariz. Rev. Stat. § 36-2153(A).

18. The Act challenged here would radically expand this requirement, compelling physicians, or designated health care professionals acting on their behalf, to "inform" *every* woman seeking an abortion, orally and in person, at least 24 hours before the procedure, that "it may be possible to reverse the effects of a medication abortion if the woman changes her mind but that time is of the essence," and that "information on and assistance with reversing the effects of a medication abortion is available on the department of health services' website." S.B. 1318, § 4 (to be codified at Ariz. Rev. Stat. § 36-2153(A)(2)(h), (i)).

19. The Act also directs the ADHS to post on its website "information on the potential ability of qualified medical professionals to reverse a medication abortion,

6

including information directing women where to obtain further information and assistance in locating a medical professional who can aid in the reversal of a medication abortion." *Id*. (to be codified at Ariz. Rev. Stat. § 36-2153(C)(8)).

20. Plaintiffs face extreme consequences if they do not comply with the Act. Under Ariz. Rev. Stat. § 36-2153(I), a physician's failure to comply with the Act constitutes "an act of unprofessional conduct and the physician is subject to license suspension or revocation." Under Ariz. Rev. Stat. § 36-449.02 and § 36-449.03, ADHS has the authority to assess a penalty, revoke a clinic license, or take other disciplinary action against a clinic for violating the Act. Plaintiffs face severe licensing consequences enforceable by other state agents as well. *See, e.g.*, Ariz. Rev. Stat. §§ 36-429, 36-430, 32-1857(C). The Act also confers a private right of action on patients, their spouses, and the parents of patients under the age of 18, enabling potential litigation against Plaintiffs and others similarly situated. Ariz. Rev. Stat. § 36-2153(J).

**B. Medical Facts About Abortion**

21. Women seek abortions for a variety of medical, psychological, emotional, familial, economic, and personal reasons.

22. Approximately one in three women in the United States will have an abortion by age 45.

23. Plaintiffs provide their patients with both surgical and medication (i.e. non-surgical) abortion options.

24. About three-fourths of abortions provided in Arizona are surgical.

25. The most common form of medication abortion is a regimen of a combination of two prescription drugs, mifepristone and misoprostol, which is available through the first 9-10 weeks of pregnancy measured from the first day of the woman's last menstrual period (the "mifepristone/misoprostol regimen" or "early medication abortion").

26. Mifepristone, also known as "RU-486" or by its commercial name Mifeprex, works first by temporarily blocking the hormone progesterone, which is necessary to maintain pregnancy, and by increasing the efficacy of the second medication in the regimen, misoprostol. Misoprostol, which is taken up to 72 hours after mifepristone, causes the uterus to contract and expel its contents.

27. This regimen is extremely effective.

28. Both mifepristone and misoprostol are also each independently capable of terminating a pregnancy in a smaller percentage of cases. However, because the combination of the drugs, using the regimen provided by Plaintiffs, is far more effective in terminating a pregnancy, Plaintiffs only administer the drugs in combination when providing an early medication abortion.

29. In addition to providing early medication abortion, Plaintiffs sometimes provide abortions later in pregnancy using only medications to terminate the pregnancy. For example, sometimes misoprostol alone is used to induce abortion in a hospital setting; this is called an "induction." Another abortion method sometimes performed later in pregnancy involves using a medication called digoxin to cause fetal demise prior to the surgical removal of the pregnancy.

30. As part of their ethical and legal obligation to obtain informed consent before performing an abortion, Plaintiffs discuss with each patient relevant information to assist her with the decision of whether to have an abortion. The discussion includes the patient's options and alternatives (including carrying the pregnancy to term, adoption, and abortion), the abortion procedures that are available to her depending on the gestational age of the pregnancy and her medical history, and the risks and benefits associated with each procedure. The goal of the informed consent process is to provide each of Plaintiffs' patients with the information necessary to enable her to make the right decision for herself.

31.  Plaintiffs advise each of their patients that the decision to have an abortion is hers alone to make, and not to start an abortion, medication or surgical, unless and until she is firm in her decision to terminate the pregnancy.

32.  Although mifepristone is not considered an effective abortifacient on its own (as compared to the combined regimen), Plaintiffs counsel their patients to be certain in their decision to terminate their pregnancies when starting the mifepristone/misoprostol regimen, mainly because mifepristone alone will cause termination in a significant percentage of pregnancies.

### C. Facts About "Medication Abortion Reversal"

33.  Although the Act directs ADHS to post on its website "information on the potential ability of qualified medical professionals to reverse a medication abortion, including information directing women where to obtain further information and assistance in locating a medical professional who can aid in the reversal of a medication abortion," SB 1318 § 4 (to be codified at Ariz. Rev. Stat. § 36-2153(C)(8)), ADHS has not yet done so.

34.  On April 21, 2015, Plaintiff PPAZ's President and CEO wrote to ADHS then-Interim Director Cory Nelson requesting information about what ADHS intends to post on its website in response to the Act's directive, and requested a response by May 22, 2015. After receiving no response to its first letter, on May 22, Plaintiff PPAZ's President and CEO followed up again, this time with current ADHS Director Christ, to request the same information. Plaintiff PPAZ requested a response by May 29.

35.  On June 1, Plaintiff PPAZ's President and CEO received a letter from ADHS Director Christ stating, "[g]iven the impact of [S.B. 1318] the Department is still working through the requirements and vetting potential language," and that the information required under the Act would be posted by July 3, and possibly available sooner, by June 19.

9

36. There is no credible evidence that a medication abortion can be reversed. This is true as to the most common type of medication abortion (the combined mifepristone/misoprostol regimen) as well as a medication abortion via labor induction or digoxin.

37. Indeed, once an abortion has occurred, whether by medication abortion or by any other means, a woman is no longer pregnant, which cannot be reversed.

38. Upon information and belief, there are no physicians in Arizona offering any treatment to reverse a medication abortion after a woman has taken the combined mifepristone/misoprostol regimen.

39. Upon information and belief, there are no physicians in Arizona offering any treatment to reverse a medication abortion via induction or digoxin.

40. As the Legislature considered and debated the Act, a physician from Arizona testified about an experimental practice proposed by a physician in San Diego, who believes he can "reverse" the effects of mifepristone.

41. Upon information and belief, a small number of physicians in Arizona, and other physicians elsewhere, have experimented with this practice, which involves injecting large doses of progesterone in patients who have taken mifepristone, but have not yet taken the second drug in the regimen, misoprostol.

42. The fact that there are physicians experimenting with using progesterone to counteract mifepristone does not constitute credible, medically accepted evidence that the experimental practice is effective or safe.

43. Upon information and belief, the use and/or study of this experimental practice has not been reviewed or sanctioned by any independent ethics committee or board or any major medical association.

44. This experimental practice is opposed by the nation's leading women's medical association, ACOG, because its safety and efficacy have not been established.

010-8087-2409/2/AMERICAS

45. Because there is no evidence that a medication abortion can be reversed, Plaintiffs do not tell their patients that it may be possible to reverse a medication abortion, nor do they tell their patients that information and assistance is available to reverse a medication abortion.

### D. Impact of the Act

46. The Act compels Plaintiffs, unwillingly and against their best medical judgment, to convey to their patients, orally and in person, in a private medical setting, a state-mandated message that is neither medically nor scientifically supported.

47. The law forces Plaintiffs to discuss with their patients the possibility of reversing a medication abortion, and to refer patients to information about where to get assistance with possible reversal—despite the fact that there is no evidence that a medication abortion can be reversed. The Act thus forces Plaintiffs to violate their ethical obligations to their patients, undermines the establishment of a relationship of trust and confidence between a patient and her physician, and distorts the informed consent process.

48. The Act also compels Plaintiffs, against their best medical judgment, to endorse and advertise to their patients an experimental practice that violates the standard of care and that is opposed by ACOG.

49. The Act's mandated discussion about "medication abortion reversal" and about the fact that assistance and information is available from ADHS's website encourages patients to wrongly believe that "medication abortion reversal" is an established medical treatment, when no reliable, medically accepted evidence exists that the experimental practice works. Therefore, the Act requires patients to receive untruthful and/or misleading information.

50. The Act thus harms Plaintiffs' patients who are considering an early medication abortion.

010-8087-2409/2/AMERICAS

51.     The Act compels Plaintiffs to convey, as part of the informed consent process, the medically unsupported message that a medication abortion may be reversible and that information and assistance is available to do so. The state-mandated message directly contradicts the critical message Plaintiffs seek to convey to their patients: that they must be certain about terminating their pregnancy before they begin the abortion process.

52.     Thus, the Act creates a risk that a patient will choose to begin an abortion before she is ready to do so, and conflicts with the purpose of the informed consent process. In this additional respect, the Act is harmful to women.

53.     Because the Act compels Plaintiffs to tell *every* abortion patient about the possibility of reversing a medication abortion, it compels Plaintiffs to convey a state message that is completely irrelevant (in addition to being untruthful) to patients who are only eligible for or interested in a surgical abortion. The majority of Plaintiffs' abortion patients receive a surgical abortion.

54.     The Act's mandated information is also completely irrelevant (in addition to being untruthful) for patients receiving a medication abortion via induction or with digoxin.

55.     The Act thus undermines the informed consent process by forcing Plaintiffs to provide to patients confusing, distracting and untruthful information that is not tailored to their specific medical situations.

**V.     CLAIMS FOR RELIEF**

<u>**COUNT I – FIRST AMENDMENT RIGHTS OF PHYSICIANS**</u>

56.     The allegations of paragraphs 1 through 55 are incorporated as though fully set forth herein.

57.     The Act violates Plaintiffs' rights under the First Amendment to the U.S. Constitution by compelling them to tell their patients, orally and in person, in a private medical setting, a state-mandated message about an experimental medical treatment that

12

1  is not supported by credible evidence, that violates accepted ethical standards and best
2  practices for medical informed consent, and that they would not otherwise tell their
3  patients.

**COUNT II – FOURTEENTH AMENDMENT RIGHTS OF PATIENTS**

58. The allegations of paragraphs 1 through 55 are incorporated as though fully set forth herein.

59. The Act violates the rights of patients seeking abortions in Arizona under the Fourteenth Amendment to the U.S. Constitution by forcing them to receive information from their physician that is untruthful, misleading, and/or irrelevant to the decision to have an abortion.

**VI.   REQUEST FOR RELIEF**

Plaintiffs respectfully request that this Court:

A. Issue a declaratory judgment that the Act is unconstitutional and unenforceable;

B. Issue preliminary and permanent injunctive relief restraining Defendants, and their employees, agents, and successors in office from enforcing the Act;

C. Grant Plaintiffs attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1988; and;

D. Grant such other and further relief as this Court may deem just, proper, and equitable.

Dated: June 4, 2015

Respectfully submitted,

By:   *s/Lawrence J. Rosenfeld*

Lawrence Rosenfeld
AZ Bar No. 004426

Daniel B. Pasternak
AZ Bar No. 023751
Squire Patton Boggs (US) LLP
1 East Washington Street, Suite 2700
Phoenix, AZ 85004
(602) 528-4000
lawrence.rosenfeld@squirepb.com
daniel.pasternak@ squirepb.com

Diana Salgado*
Planned Parenthood Federation of America
434 W. 33rd Street,
New York, NY 10001
(212) 541-7800
diana.salgado@ppfa.org

Alice Clapman*
Helene T. Krasnoff*
Planned Parenthood Federation of America
1110 Vermont Avenue NW, Suite 300
Washington, DC 20005
(202) 973-4800
alice.clapman@ppfa.org
helene.krasnoff@ppfa.org

*Attorneys for Planned Parenthood Arizona, Inc.*

David Brown*
Hillary Schneller*
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
(917) 637-3600
dbrown@reprorights.org
hschneller@reprorights.org

*Attorneys for Paul A. Isaacson, M.D.*

Andrew Beck*
Talcott Camp*
Brigitte Amiri*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor

14

New York, NY 10004
(212) 549-2633
abeck@aclu.org
tcamp@aclu.org
bamiri@aclu.org

*Attorneys for Eric Reuss, M.D., M.P.H.; Desert Star Family Planning, LLC; DeShawn Taylor, M.D.*

Daniel Pochoda
AZ Bar No. 021979
Victoria Lopez
AZ Bar No. 330042\*\*
American Civil Liberties Union Foundation of Arizona
3707 N. 7th Street, Suite 235
Phoenix, AZ 85014
(602) 650-1854
dpochoda@acluaz.org
vlopez@acluaz.org

*Attorneys for Eric Reuss, M.D., M.P.H.; Paul A. Isaacson, M.D.; Desert Star Family Planning, LLC; DeShawn Taylor, M.D.*

\**Applications for admission pro hac vice forthcoming*
\*\**Admitted pursuant to Ariz. Sup. Ct. R. 38(f)*

15