# EXHIBIT C
# GRATTAN BROWN, S.D.T.
# DECLARATION

Douglas V. Drury, Esq.
MUELLER & DRURY, P.C.
8110 East Cactus Road, Ste. 100
Scottsdale, AZ 85260-5210
mdlaw@muellerdrury.com
(480) 368-5511
State Bar No. 011461
Attorney for Defendant Cara M. Christ,
Director of the Arizona Department of Health Services,
in her official capacity

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Planned Parenthood Arizona, Inc., et al. ) | Case No.: 2:15-CV-01022-SPL |
| ) | |
| Plaintiffs, ) | |
| ) | **DECLARATION OF GRATTAN** |
| v. ) | **BROWN** |
| ) | |
| Mark Brnovich, Arizona Attorney General,) | |
| in his official capacity, et. al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## DECLARATION OF GRATTAN BROWN, S.T.D.

Dr. Grattan Brown as follows:

1. I am over 18 years of age and competent to make this declaration.

2. I submit this declaration in opposition to Plaintiffs' motion for a preliminary injunction preventing enforcement of Arizona SB 1318, a state law requiring abortionists to provide women information about the possibility of reversing the effects of mifepristone, the first drug of the common two drug abortion protocol prior to beginning the abortion.

-1-

3. I received a Doctorate in Sacred Theology from the Alfonsian Academy in Rome, a Master of Arts in English from the University of Memphis, and a Bachelor of Arts in English from Washington and Lee University. I have written on rights of conscience in health care, stem cell research, and medical futility and presented my work in conferences sponsored by Belmont Abbey College, Houston Baptist University, Notre Dame University, Baylor University, Union University, Southern Evangelical Seminary, University Faculty for Life, and Human Life International. I was honored to have been one of fifty American theologians chosen to participate in the conference "The Intellectual Tasks of the New Evangelization" sponsored by the United States Conference of Catholic Bishops and the Knights of Columbus in Washington DC. I have contributed articles to the National Catholic Bioethics Quarterly, Christian Bioethics, Catholic Health Care Ethics: A Manual for Ethics Committees, the Encyclopedia of Catholic Social Thought, and the New Catholic Encyclopedia. From 2001-2004 I conducted research in religion and public policy at the American Enterprise Institute in Washington, D.C. and served as adjunct bioethics faculty at the Georgetown University School of Medicine. From 2004-2008, I served as an assistant professor of moral theology at St. Charles Borromeo Seminary in Philadelphia, PA and was a consultant to the National Catholic Bioethics Center in developing its Certification Program in Health Care Ethics. I am currently Chair of the Theology Department and an Associate Professor of Theology at Belmont Abbey College in Belmont, NC.

4. Off-label uses of medications are those not approved by the FDA and therefore not able to be officially listed in literature about those medications.

5. Every drug has a variety of beneficial uses that are discovered during the stage of scientific research and development. Typically, a subset of these beneficial

uses are tested for safety and effectiveness and submitted for FDA approval. The FDA approval process brings a high degree of public certainty that the uses tested according to its standards are safe, effective, and beneficial. Yet this process does not prevent scientists, physicians, pharmacists, and pharmaceutical companies from recognizing the safety, effectiveness, and benefit of other uses, either already known from the original research and development or discovered later in clinical use or through further research.

6. A pharmaceutical company has its own set of criteria for deciding which uses of a medication to submit for FDA approval. Those criteria include efficacy, limited side-effects, potential profitability, etc. Off-label use is not inherently unethical, particularly when there is an extensive body of evidence for the safe and efficacious utilization of a particular medication. Considerable attention and effort must be directed to assuring that the benefit to burden profile for such off-label use is fitting and appropriate for the particular case under consideration.

7. Since off-label use is not inherently unethical, the ethical use of off-label medication is judged by its goals and circumstances. The goals are the typical goals of medicine, emphasizing the best interests of the patient and addressing significant therapeutic needs.

8. There are particular circumstances relevant to this issue. The prescribing physician must have at least probable knowledge that the use is safe, effective, and beneficial. The physician must inform the patient about how the medication is being used and why the physician believes that it is safe, effective, and beneficial. The patient must consent to that use. The physician must monitor the patient for disadvantageous or dangerous side effects.

9. If a physician knows that an off-label use will very effectively address a serious, life-threatening condition without disproportionate burdens, especially in the

absence of "on-label" approaches, then of that knowledge may at times even imply an obligation on his part to provide it.

10. A good example would be a case of accidental or intentional poisoning that could be best treated with an off-label medical use. In this case, a drug is used to reverse the effects of a natural chemical (e.g. poisoning by snakebite) or a man-made chemical, and could legitimately be used if it offered the best chances of survival and recovery. If it is legitimate to treat accidental and deliberate poisoning in this way, it would also be legitimate to reverse the effects of a chemical because of the patient's choice, especially if the choice were to save the life of the patient or of another person, such as an embryo or fetus.

11. The off-label use of progesterone to reverse the effects of mifepristone is just such a situation. Mifepristone acts to disrupt the natural biological functioning of the woman's body and fatally disrupt the natural development of the embryo's body. The drug blocks progesterone, needed to build and maintain the uterine wall during pregnancy. As a result, the embryo cannot implant, receive nutrition, and continue to develop. Women can experience uterine and stomach cramps, high blood pressure, dizziness, reduced blood potassium, nausea, and increased vulnerability to infection and septic shock. The off-label use of progesterone to build and maintain the uterine wall during pregnancy is a sensible use as a reagent for mifepristone. Moreover, the fact that progesterone is a substance naturally found in a woman's body should diminish off-label safety concerns.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: July 29 2015          [signature] Jratten J Brown