MARK BRNOVICH
Attorney General
Firm Bar No. 14000

Kevin D. Ray (#007485)
Aubrey Joy Corcoran (#025423)
Assistant Attorneys General
Education and Health Section
1275 West Washington Street
Phoenix, Arizona 85007-2926
Telephone: (602) 542-8328
Facsimile:  (602) 364-0700
Email: EducationHealth@azag.gov
*Attorneys for Mark Brnovich, Arizona Attorney General*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Planned Parenthood Arizona, Inc.; Eric Reuss, M.D., M.P.H.; Paul A. Isaacson, M.D.; Desert Star Family Planning, LLC; DeShawn Taylor, M.D., <br><br>Plaintiffs, <br>vs. <br><br>Mark Brnovich, Arizona Attorney General, in his official capacity; Cara M. Christ, Director of the Arizona Department of Health Services, in her official capacity; Patricia E. McSorley, Executive Director of the Arizona Medical Board, in her official capacity; Richard T. Perry, M.D., Medical Board Chair, in his official capacity; James Gillard, M.D., Medical Board Vice Chair, in his official capacity; Jodi A. Bain, Medical Board Member, in her official capacity; Marc D. Berg, M.D., Medical Board Member, in his official capacity; Donna Brister, Medical Board Member, in her official capacity; R. Screven Farmer, M.D., Medical Board Member, in his official capacity; Gary R. | Case No. 2:15-cv-01022-SPL <br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT ATTORNEY GENERAL BRNOVICH** <br><br>(Honorable Steven P. Logan) |

| | |
|---|---|
| 1 | Figge, M.D. Medical Board Member, in his official capacity; Robert E. Fromm, M.D., Medical Board Member, in his official capacity; Paul S. Gerding, Medical Board Member, in his official capacity; Lois Krahn, M.D., Medical Board Member, in her official capacity; Edward G. Paul, M.D., Medical Board Member, in his official capacity; Wanda J. Salter, Medical Board Member, in her official capacity; Jenna Jones, Executive Director of the Arizona Board of Osteopathic Examiners in Medicine and Surgery, in her official capacity; Scott Steingard, D.O., Board of Osteopathic Examiners in Medicine and Surgery President, in his official capacity; Douglas Cunningham, D.O., Board of Osteopathic Examiners in Medicine and Surgery Vice President, in his official capacity; Gary Erbstoesser, D.O., Board of Osteopathic Examiners in Medicine and Surgery Member, in his official capacity; Jerry G. Landau, Board of Osteopathic Examiners in Medicine and Surgery Member, in his official capacity; Martin B. Reiss, D.O., Board of Osteopathic Examiners in Medicine and Surgery Member, in his official capacity; Lew Riggs, Board of Osteopathic Examiners in Medicine and Surgery Member, in his official capacity; Vas Sabeeh, D.O., Board of Osteopathic Examiners in Medicine and Surgery Member, in his official capacity, |
| | Defendants. |

Defendant Mark Brnovich, Arizona Attorney General, ("Attorney General Brnovich"), replies in support of his Motion to Dismiss (Dkt. 46). Attorney General Brnovich should be dismissed from this matter because he has no responsibility for enforcing A.R.S. §§ 36-2153(A)(2)(h)-(i) (the "Act"), the statutory sections being challenged in this case.

## I. Plaintiffs Have Not Properly Asserted Claims against Attorney General Brnovich under 42 U.S.C. § 1983.

Plaintiffs assert that their § 1983 claims are sufficient because they have alleged that "*some* person has deprived [them] of a federal right . . . [and] acted under the color of state law." (Dkt. 66 at 5 [quoting *Cabrera v. Martin*, 973 F.2d 735, 745 (9th Cir. 1992) (internal quotation marks omitted].)  However, Plaintiffs miss the point.

"Liability under [§] 1983 arises *only* upon a showing of *personal* participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (emphasis added). Accordingly, "a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (emphasis added).  It is not enough, as Plaintiffs suggest, that the individual has only "some connection with enforcement." (Dkt. 66 at 6 [quoting *So. Pac. Transp. Co.*, 651 F.2d at 615 (internal quotation marks omitted)].)

As a matter of law, Plaintiffs have failed to properly assert that Attorney General Brnovich, through his own individual actions, will violate their constitutional rights. For Attorney General Brnovich to be capable of violating Plaintiffs' constitutional rights, he must have independent authority to enforce the Act. As a matter of law, he does not.  Plaintiffs simply lack a cognizable legal theory.  *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008).  Accordingly, Attorney General Brnovich should be dismissed from this action.  *See* Fed. R. Civ. P. 12(b)(6).

## II. Because Attorney General Brnovich's Role in Relation to the Act is as a Legal Advisor, Not a Policy Maker, He Has No Authority to Enforce the Act.

Plaintiffs also assert that they have properly named Attorney General Brnovich as a defendant because the statutes cited in their Complaint (Dkt. 1 ¶ 11)—A.R.S. §§ 32-1857, 36-429(B), and 36-431.01(E)—give him the authority to enforce the Act. However, none of these statutes give Attorney General Brnovich the authority to initiate an original proceeding.

Instead, Plaintiffs are attempting to derive Attorney General Brnovich's authority to enforce the Act from case law. For Plaintiffs to succeed under their theory, Attorney General Brnovich would have to be vested with common law powers—powers that he does not have. In fact, the cases cited by Plaintiffs in support of their argument strengthen Attorney General Brnovich's Motion to Dismiss (Dkt. 46).

It is well-settled that the Arizona Attorney General has *only* the authority conferred to him by Arizona's constitution and statutes. *Yes on Prop 200 v. Napolitano*, 160 P.3d 1216, 1224, ¶ 19 (Ariz. App. 2007) ("[T]he responsibilities and functions of the Attorney General come from the state constitution or statutes; the Attorney General has no authority arising from the common law."). And, he *only* has authority to bring independent actions when explicitly stated in statute. *Ariz. State Land Dep't v. McFate*, 348 P.2d 912, 916 (Ariz. 1960) ("[W]here the legislature intended to authorize the Attorney General to initiate proceedings, it has so provided in clear terms.").

Plaintiffs rely on *McFate* to assert that when the legislature states that the attorney general may "commence" or "bring" an enforcement action, it necessarily means that the attorney general has independent enforcement authority. (Dkt. 66 at 6.) However, this assertion ignores the holding and statutory language at issue in that case.

In *McFate*, the issue was whether the attorney general, on behalf of the state, had independent authority seek an injunction against the state land commissioner to prevent him from selling certain parcels of state land. The Arizona Supreme Court held that the attorney general's initiation of an original action of his own relation in superior court was inconsistent with his fundamental obligation as a legal advisor to the official agencies of the State. *McFate*, 348 P.2d at 918. In reaching its decision, the court "recognized that there are occasions on which the Attorney General may initiate proceedings on behalf of the State, and may even appear in opposition to a particular State agency, but these instances are dependent upon *specific grants of power*." *Id.* at 915 (emphasis added). As examples, the court cited

1  statutes that clearly empowered the attorney general to "bring" or "commence" an action on
2  his own accord. *Id.* at 916-17. It further stated that the attorney general does not have the
3  general power to initiate an original proceeding and that "[t]o hold otherwise would render
4  meaningless the . . . statutory provisions which authorize the Attorney General to commence
5  proceedings in certain specific circumstances, and would, in effect, vest him with common
6  law powers contrary to the clear purport of our Constitution and statutes." *Id.* at 916.
7       To determine whether the attorney general had a specific grant of power that would
8  authorize him to independently bring an injunction action against the state land
9  commissioner, the court analyzed the statutory section at issue, which stated that

> The [state land] department may, in the name of the state, commence, prosecute and defend all actions and proceedings to protect the interest of the state in lands within the state or the proceeds thereof. Actions shall be commenced and prosecuted at the request of the department by the attorney general, a county attorney, or a special counsel under the direction of the attorney general.

14 *Id.* at 917 (internal quotation marks omitted). The court also considered the statutory section
15 stating that "the state land commissioner shall . . . [e]xercise and perform all powers and
16 duties vested in or imposed upon the state land department." *Id.* The court concluded that
17 this statutory language "confirm[ed] the role of the Attorney General as legal advisor and not
18 as a policy maker, and d[id] not grant him special powers . . . to initiate legal proceedings."
19 *Id.* at 917. It was the state land department that was vested with full authority over the
20 parcels of state land. *Id.* at 918. Therefore, based on the statutory language, the Arizona
21 Supreme Court held that the attorney general did not have statutory authority to initiate the
22 injunction proceeding. *Id.* at 918. "[T]he initiation of litigation by the Attorney General in
23 furtherance of interests of the public generally, as distinguished from policies or practices of a
24 particular department, is not a concomitant function of [his] role" as the "'legal advisor of the
25 departments of the state' who shall 'render such legal services as the departments require.'"
26 *Id.* at 915 (quoting A.R.S. § 41-192(A)(1)).

1  Here, just as in *McFate*, the statutes cited in Plaintiffs' Complaint (Dkt. 1 ¶ 11) do not
2  provide Attorney General Brnovich independent authority to enforce the Act.  First, as stated
3  in *McFate*, Attorney General Brnovich's status as "legal advisor of the departments of the
4  state" does not give him the authority to independently enforce the Act.  Instead, he is a legal
5  advisor to the Arizona Department of Health Services (the "Department") and the Board of
6  Osteopathic Examiners in Medicine and Surgery (the "Osteopathic Board").  And, like *McFate*,
7  it is the Osteopathic Board, not Attorney General Brnovich, that has the authority to "[p]rotect
8  the public from unlawful, incompetent, unqualified, impaired and unprofessional practitioners
9  of osteopathic medicine" and to "[i]ssue licenses, conduct hearings, place physicians on
10 probation, revoke or suspend licenses, enter into stipulated orders, issue letters of concern or
11 decrees of censure and administer and enforce [the] chapter."  A.R.S. §§ 32-1803(A)(1), (2).
12 And, it is the director of the Department, not Attorney General Brnovich, who may suspend or
13 revoke a healthcare institution's license, A.R.S. § 36-427(A); assess civil penalties for violation
14 of the statutes and rules governing healthcare institutions, A.R.S. § 36-431.01(A); and enjoin the
15 operations of a healthcare institution, A.R.S. § 36-430.  These statutory sections make clear that
16 Attorney General Brnovich's role under the Act is as a legal advisor to the Department and the
17 Osteopathic Board, not as a policy maker.  *See McFate*, 348 P.2d at 917.
18  In their Response, Plaintiffs first argue that under A.R.S. § 36-431.01(E), "Arizona
19 statutes give the Attorney General the authority to bring an action to enforce the collection of
20 penalties" for violations of the Act.  (Dkt. 66 at 7.)  However, the attorney general's authority
21 to collect civil penalties assessed *by the Department*, in no way violates Plaintiffs'
22 constitutional rights or gives Attorney General Brnovich the authority to enforce the Act.
23 Rather, it is the Department that has the authority to determine whether Plaintiffs have
24 violated the Act and whether to assess civil penalties against them.  Attorney General
25 Brnovich's authority to collect civil penalties stems only from the *Department's* enforcement
26 of the Act.  His general authority to collect civil penalties after they have been finally

assessed by the Department is too far removed to establish his personal enforcement of the Act. As a matter of law, Attorney General Brnovich's authority to bring an action to enforce the collection of penalties does not give him authority to enforce the Act.

They next assert that under A.R.S. § 36-429(B), "the Attorney General can also revoke the license or enjoin the operation of PPAZ and Desert Star if they violate the Act." (Dkt. 66 at 7.) However, A.R.S. § 36-429 must be read in its entirety. Subsection A states,

> [i]f *the director* reasonably believes that a violation of this chapter by a licensee endangers the health, safety or welfare of one or more of the licensee's patients . . . the director may . . . bring an action requesting the superior court to:
> 1. Remove the administrative officers, agents or employees of such licensee by injunction, enjoin the licensee from continued operation and revoke the license.
> 2. Appoint temporary personnel to continue operation of the health care institution under conditions and requirements set by the court pending correction of the violation and restoration of the licensee, revocation of the license or correction of the violation and change of ownership.

(Emphasis added.) Subsection B states that "[t]he action shall be brought in the name of the people of the state *through* the attorney general in the superior court in the county in which the health care institution is located." (Emphasis added.)

Just as in *McFate*, the plain language of the statute confirms Attorney General Brnovich's role as a legal advisor and not as a policy maker. *See McFate*, 348 P.2d at 917. This statute does not specifically grant Attorney General Brnovich any special powers to initiate revocation or injunction proceedings. *See id.* at 915. It is the director of the department who may initiate revocation or injunction proceedings *through* her legal advisor, Attorney General Brnovich. As a matter of law, Attorney General Brnovich does not have the authority to enforce the Act by revoking the license or enjoining the operation of PPAZ and Desert Star. To find otherwise "would, in effect, vest him with common law powers contrary to the clear purport of our Constitution and statutes." *Id.* at 916.

Finally, Plaintiffs assert that under A.R.S. § 32-187(C), "the Attorney General can file suit to enjoin the practice of osteopathic physicians for a violation of the Act." (Dkt. 66 at 7.) In making this argument, they emphasize the fact that the attorney general may not on his own initiative file an injunction action, but instead may make a *request* that a petition for injunction to be filed. (*Id.*)  A.R.S. § 32-187(C) states that "[a] petition for injunction shall be filed in the name of this state *by the board* or *at the request* of the attorney general in Maricopa county or the county where the respondent resides or may be found." (Emphasis added.)

Again, just as in *McFate*, the plain language of the statute confirms Attorney General Brnovich's role as a legal advisor and not as a policy maker. *See McFate*, 348 P.2d at 917. The statute clearly gives the Osteopathic Board the authority to file a petition for injunction, which is concomitant with its authority to "[p]rotect the public from unlawful, incompetent, unqualified, impaired and unprofessional practitioners of osteopathic medicine" and to "[i]ssue licenses, conduct hearings, place physicians on probation, revoke or suspend licenses, enter into stipulated orders, issue letters of concern or decrees of censure and administer and enforce [the] chapter." A.R.S. §§ 32-1803(A)(1), (2). The statute does *not* give Attorney General Brnovich a "specific grant[] of power" to file a petition for injunction. *See McFate*, 348 P.2d at 915. To the contrary, it makes clear that he may only act as a legal advisor and to make a *request* to someone else that a petition be filed. Thus, as a matter of law, Brnovich does not have the authority to enforce the Act by filing suit to enjoin the practice of osteopathic physicians for a violation of the Act; and, to find otherwise "would, in effect, vest him with common law powers contrary to the clear purport of our Constitution and statutes." *Id.* at 916.

### III. Attorney General Brnovich Has No Independent Authority to Take Action Against Plaintiffs Under the Act.

Plaintiffs next argue that "[t]o be a proper defendant, the Attorney General need not be authorized to enforce the Act independently of other named Defendants." (Dkt. 66 at 8.) Plaintiffs again miss the point. The issue is not that other Defendants have authority to enforce the Act. The issue is that Attorney General Brnovich has *no* authority to enforce the Act.

It is true that "Arizona courts have recognized that attorneys general can initiate proceedings independently of and even in opposition to state agencies, *where empowered by statute to do so*." (Dkt. 66 at 8 [emphasis added].) As discussed above, the statues cited by Plaintiffs do not give Attorney General Brnovich authority to independently initiate proceedings. The authority to enforce the Act is held exclusively by other Defendants. Accordingly, as a matter of law, Attorney General Brnovich is not a proper Defendant to this action because he does not have the authority to enforce the Act.

### IV. Conclusion.

For the foregoing reasons, Attorney General Brnovich respectfully requests that this Court grant his motion to be dismissed from this action.

Dated this 21st day of August, 2015.

MARK BRNOVICH
Attorney General

 /s/ Aubrey Joy Corcoran
Aubrey Joy Corcoran
Kevin D. Ray

Assistant Attorneys General
*Attorneys for Mark Brnovich, Arizona Attorney General*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of August, 2015, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmission to the following:

Lawrence Rosenfeld
Daniel B. Pasternak
Squire Patton Boggs (US) LLP
1 East Washington Street, Suite 2700
Phoenix, AZ 85004
lawrence.rosenfeld@squirepb.com
daniel.pasternak@squirepb.com
*Attorneys for Planned Parenthood Arizona, Inc.*

Diana Salgado
Planned Parenthood Federation of America
434 W. 33rd Street
New York, NY 10001
diana.salgado@ppfa.org
*Attorneys for Planned Parenthood Arizona, Inc.*

Alice Clapman
Helene T. Krasnoff
Planned Parenthood Federation of America
1110 Vermont Avenue NW, Suite 300
Washington, D.C. 20005
alice.clapman@ppfa.org
helen.krasnoff@ppfa.org
*Attorneys for Planned Parenthood Arizona, Inc.*

David Brown
Hillary Schneller
Center for Reproductive Rights
199 Water Street, 22nd Floor
New York, NY 10038
dbrown@reprorights.org
hschneller@reprorights.org
*Attorneys for Paul A. Isaacson, M D.*

Andrew Beck
Susan Talcott Camp
Brigitte Amiri
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
abeck@aclu.org
tcamp@aclu.org
bamiri@aclu.org
*Attorneys for Eric Reuss, M.D., M.P.H;*
*Desert Star Family Planning, LLC; DeShawn Taylor, M.D.*

Daniel Pochoda
Victoria Lopez
American Civil Liberties Union Foundation of Arizona
3707 N. 7th Street, Suite 235
Phoenix, AZ 85014
dpochoda@acluaz.org
vlopez@acluaz.org
*Attorneys for Eric Reuss, M.D., M.P.H.; Paul A. Isaacson, M.D.;*
*Desert Star Family Planning, LLC; DeShawn Taylor, M.D.*

John R. Tellier
Arizona Attorney General's Office
1275 W. Washington
Phoenix, AZ  85007
john.tellier@azag.gov
*Attorneys for Members of the Arizona State Medical*
*Board and Members of the Board of Osteopathic*
*Examiners in Medicine and Surgery*

Douglas V. Drury
Mueller & Drury, P.C.
8110 E Cactus Rd., Suite 100
Scottsdale, AZ 85260
dougdrury@muellerdrury.com
*Attorneys for Cara M. Christ, M.D.*

Kimberly A. Parker
Tiffany Payne
Skye Lynn Perryman
1875 Pennsylvania Ave, NW
Washington, D.C. 20006
kimberly.parker@wilmerhale.com
tiffany.Payne@wilmerhale.com
skye.perryman@wilmerhale.com
*Attorneys for Amici Curiae American College of*
*Obstetricians and Gynecologists, American Medical Association,*
*and Arizona Medical Association*

Mailee R. Smith
Americans United for Life
655 15th St. NW, Suite 410
Washington, D.C. 20005
mailee.smith@aul.org
*Attorneys for Amici Curiae American Association of Pro-Life*
*Obstetricians & Gynecologists, Physicians for Life, National*
*Association of Pro-Life Nurses, and National*


By: /s/ Aubrey Joy Corcoran

#4609278